**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____X
HENRY LOCKHART,
Plaintiff,

CIVIL ACTION NO.

VS.

LONG ISLAND RAILROAD COMPANY
Defendant.
_____X

**<u>COMPLAINT</u>**

<u>NATURE OF ACTION</u>

1. The plaintiff Henry Lockhart brings this action against the defendant Long Island Rail Road Company for violations of the Federal Rail Safety Act, 49 U.S.C. Section 20109 (FRSA).

<u>JURISDICTION</u>

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. Section 20109(d)(3).  Venue is appropriate ein this Court given both parties are engaged in extensive railroad operations in Manhattan, New York.  49 U.S.C. Section 20109 (d)(3).

<u>PARTIES</u>

3. The defendant Long Island Railroad Company (LIRR) is engaged in extensive passenger railroad operations to and from Penn Station in Manhattan, New York. The LIRR is a railroad carrier within the meaning of 49 U.S.C. 20102, and as such is a covered employer within the meaning of FRSA Section 20109, 49 U.S.C. 20109.

1

4. The plaintiff Henry Lockhart is a LIRR locomotive engineer operating passenger trains traveling to and from Penn Station in Manhattan, New York. At all material times, he qualified as an employee within the meaning of the FRSA, 49 U.S.C. Section 20109.

RAILROAD SAFETY STANDARDS

5. The Federal Rail Administration (FRA) is the federal agency responsibe for regulating the safety of our nation's railroads. The FRA has enacted various safety regulations applicable to railroad employees and carriers.

6. Locomotive engineers who operate passenger trains have the lives and limbs of thousands of people in their hands. Engineers are alone in the control cab, and must be fully alert and attentive at all times in order to safely operate the train. As far as operating passenger trains is concerned, it is a hazardous condition for a locomotive engineer to be under the influence of a narcotic medication.

7. By explicit regulation, the FRA prohibits locomotive engineers from reporting for service or going on duty while under the influence of any narcotic medication. 49 CFR 219.101(a)(2): "No employee may report for covered service, or go or remain on duty in covered service while--(iii) Under the influence of or impaired by any controlled substance." See generally 49 CFR 219.

8. The LIRR's Operating Rule G explicitly prohibits locomotive engineers from operating trains while under the influence of a narcotic medication. The LIRR's Medical Department instructs locomotive engineers that they cannot report to work for 24-48 hours after taking a narcotic pain medication.

9. For a locomotive engineer to report to work while under the influence of a narcotic medication would be a violation of FRA safety regulation 49 CFR 219.101(a)(2), a violation of LIRR Rule G, and a violation of common sense safety standards.

10. When a locomotive engineer informs a railroad that he is under the influence of a narcotic medication, he is necessarily reporting the existence of a hazardous safety condition.

FRSA SECTION 20109

11. The purpose of the Federal Rail Safety Act is to "promote safety in every area of railroad operations," 49 USC 20101, and one of the ways the FRSA does so is by providing whistleblower protection to railroad workers who engage in certain protected activity. 49 U.S.C. 20109. In particular, under Section 20109 of the FRSA it is protected activity for any employee "to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security." 49 U.S.C. 20109(a)(2). It also is protected activity for any employee to report "a hazardous safety or security condition." 49 U.S.C. 2019(b)(1)(A). And it is protected activity for an employee to follow the "orders or a treatment plan of a treating physician." 49 U.S.C. 20109(c)(2).

12. It is a violation of the FRSA for a railroad employer to "reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's" protected activity. 49 U.S.C. 20109. The FRSA rights of employees cannot be overridden or ignored by any railroad policy: "The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment." 49 U.S.C 20109(h).

FACTS

13.  On August 30, 2011, plaintiff locomotive engineer Henry Lockhart incurred a work-related right shoulder injury, and commenced treatment for that condition.

14. On September 23, 2011, Lockhart reported to the LIRR Medical Department that he was taking the narcotic pain medication Vicodin for his right shoulder condition, and the Medical Department instructed him that he cannot report for work for 24-48 hours after taking such a narcotic pain medication.

15. On May 1, 2012, Lockhart's treating physician prescribed Oxycodone for his right shoulder condition to be used on a PRN basis, meaning on an "as needed" or "as required" basis.

16. On April 5, 2013, Lockhart reported to the LIRR Medical Department that he was using medication for his right shoulder pain, and the Medical Department instructed him to not to report to work if his right shoulder condition prevents the safe performance of his work.

17. On September 7, 2013, Lockhart was prescribed emergency oral surgery, which was performed on September 13, 2013. On September 7 and 13 he was prescribed the narcotic pain medication Vicodin for that condition, and took that medication. When the LIRR Medical Department returned his calls on September 13th, Lockhart reported that he had taken Vicodin for the emergency oral surgery condition, and the Medical Department confirmed he was not to work for 24-48 hours after taking that narcotic pain medication.

4

18. On November 13, 2013, Lockhart reported to the LIRR Medical Department that he did not report to work on November 9, 2013 due to his taking a narcotic medication for his right shoulder pain, and the Medical Department confirmed he was not to report to work while under the influence of such a narcotic medication.

19. On December 18, 2013, Lockhart reported to the LIRR Medical Department that he had taken the narcotic pain medication Oxycodone for his right shoulder condition, and the Medical Department again instructed him not to report for work within 24-48 hours of taking such narcotic pain medication.

20. On June 19, 2014, Lockhart reported to the LIRR Medical Department that he was taking Oxycodone for his right shoulder pain, and the Medical Department confirmed he is not to work for at least 24 hours after taking that narcotic pain medication.

21. On August 22, 2014, Lockhart reported to the LIRR Medical Department that he was taking Oxycodone for his right shoulder pain, and the Medical Department confirmed he is not to work for 24-48 hours after taking such narcotic pain medication.

22. For all of Lockhart's above referenced absences from work confirmed by the LIRR Medical Department and required by FRA regulation and LIRR Rule G, the Medical Department did not communicate to any other LIRR Department the fact Lockhart was engaging in FRSA protected activity by not reporting to work under the influence of a narcotic medication. Nor did the LIRR Legal Department, Labor Relations Department, Safety Department, Human Relations Department, or Operating Department make any effort to determine whether any of those absences were protected by the FRSA.

23. The LIRR has a "Corporate Absence Control Policy" that describes a five step progressive disciplinary process ultimately resulting in termination from employment. The first step in the disciplinary process is a Letter of Caution. Such Letters of Caution remain in any employee's file for three years, and are considered when assessing discipline for any other non-absence violations. The presence of a Letter of Caution constitutes the basis for taking the second step in the disciplinary process.

24. The LIRR's Absence Control Policy provides for a point system whereby every absence is assigned points, and violations occur whenever an employee meets or exceeds certain trigger points. Disabled or sick absence occurrences are assigned five points each, and the schedule of excessive points is: 12 or more during a one month period; 18 or more during a three month period; 24 or more points during a six month period; or 30 or more during a 12 month period. For example, four absences during a six month period equals 20 points and no violation, but five absences over six months equals 25 points and triggers a violation of the Policy.

25. On September 20, 2013, the LIRR issued a Letter of Caution against the plaintiff Henry Lockhart for violation of its Attendance Control Policy. That violation used his absence of September 14, 2013 as one of the absences counting against him. On September 13, 2013, Lockhart had reported to the LIRR Medical Department that due to emergency oral surgery he had taken the narcotic pain medication Vicodin, and the Medical Department instructed him not to report to work for 24-48 hours after taking such a narcotic medication. Accordingly, Lockhart did not report to work on September 14, 2013, and that absence was protected from any adverse action by the LIRR under

FRSA subsections (a)(2), (b)(1)(A), and (c)(2). If the LIRR had treated that absence as protected under the FRSA, Lockhart would not have been in violation of the Absence Control Policy and would not have received any Letter of Caution.

26. On July 1, 2014, the LIRR issued a Notice of Investigation trial against the plaintiff Henry Lockhart for violation of its Absence Control Policy, and on July 7, 2014 issued a Letter of Caution against him. That violation used Lockhart's June 19, 2014 absence as one of the absences counting against him. On June 19, 2014, Lockhart had reported to the LIRR Medical Department that he had taken Oxycodone for his right shoulder injury condition, and the Medical Department instructed him not to report to work for at least 24 hours after taking such a narcotic medication. Accordingly, Lockhart did not report to work on June 19, 2014, and that absence was protected from any adverse action by the LIRR under FRSA subsections (a)(2), (b)(1)(A), and (c)(2). If the LIRR had treated that absence as protected under the FRSA, Lockhart would not have been in violation of the Absence Control Policy and would not have received any Notice of Investigation or Letter of Caution.

27. On October 6, 2014 the LIRR issued a Notice of Investigation trial against the plaintiff Henry Lockhart for violation of its Absence Control Policy. That violation used Lockhart's August 24, 2014, absence as one of the absences counting against him. On August 22, 2014, Lockhart had reported to the LIRR Medical Department that he had taken Oxycodone for his right shoulder injury condition, and the Medical Department instructed him not to report to work for at least 24-48 hours after taking such a narcotic medication. Accordingly, Lockhart did not report to work on August 24, 2014, and that absence was protected from any adverse action by the LIRR under FRSA subsections

(a)(2), (b)(1)(A), and (c)(2). If the LIRR had treated that absence as protected under the FRSA, Lockhart would not have been in violation of the Absence Control Policy and would not have received any Notice of Investigation trial.

28. For each of the three Absence Control Policy violations listed above, the LIRR was on notice that one or more of the absences that were being counted against Lockhart were the result of Lockhart not reporting to work under the influence of a narcotic medication. Lockhart had reported that to the LIRR Medical Department, and his union representative also pointed that out to Lockhart's Department managers. The LIRR knew or should have known that such activity was protected under FRSA subsections (a)(2), (b)(1)(A), or (c)(2), and the LIRR had a legal duty to determine if any of those absences were protected under the FRSA.

29. By using absences protected by the FRSA as the basis in whole or in part for taking adverse and unfavorable actions against him, and by failing to make any effort to determine or have in place any process for determining whether such absences were protected by the FRSA, the LIRR acted with reckless disregard for the law and with complete indifference to the FRSA rights of the plaintiff and its employees.

30. As a result of the defendant LIRR's conduct in violation of the FRSA, the plaintiff has suffered and will suffer various economic harms as well as emotional distress and attorney fees and costs.

FRSA CAUSE OF ACTION

The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 30 of this Complaint with the same force and effect as if set forth under this cause of action.

31. The plaintiff engaged in FRSA subsection (a)(2) protected activity when he refused to violate FRA safety regulation 49 CFR 219.101(a)(2) by reporting to work as a locomotive engineer while under the influence of a narcotic medication.

32. The plaintiff engaged in subsection (b)(1)(A) protected activity when he reported a hazardous safety condition to the LIRR, namely that he was under the influence of a narcotic medication and thus unable to safely operate a passenger train.

33. The plaintiff engaged in subsection (c)(2) protected activity when he followed the treatment instructions of his treating physicians to take narcotic pain medication and not to work for 48 hours thereafter.

34. The defendant LIRR had knowledge of all the plaintiff's protected activities referenced above. The LIRR knew or should have known that such activity was protected under FRSA subsections (a)(2), (b)(1)(A), or (c)(2), and the LIRR had a legal duty to determine if any of those absences were protected under the FRSA.

35. The defendant LIRR took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it repeatedly charged him with violations of its Attendance Policy, thereby taking the initial steps in a progressive disciplinary process that ultimately ends in termination. In so doing, the defendant Railroad acted with reckless disregard for the law and with complete indifference to the FRSA rights of the plaintiff and its other employees.

36. The plaintiff filed a FRSA Complaint with the Secretary of Labor's Region 2 OSHA Whistleblower Office on October 11, 2013, and supplemented that Complaint on September 29, 2014. The original and supplemental complaints were filed within 180

days from the date the plaintiff became aware of the defendant Railroad's intent to take the adverse or unfavorable personnel actions against him.

37. The Region 2 OSHA Whistleblower Office of the U.S. Department of Labor commenced its investigation. The plaintiff fully cooperated with OSHA's investigation, during which he specifically claimed the LIRR's conduct was in violation of subsections (a)(2), (b)(1)(A), and (c)(2) of the FRSA, and the LIRR responded to each of those claims. However, as of this date the U.S. Department of Labor has not issued a final decision, and it now has been far more than 210 days since the filing of the original and supplemental FRSA Complaints.

38. Accordingly, pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in United States district court for a jury trial regarding the Railroad's violations of the FRSA, and on January 28, 2016, the plaintiff notified the U.S. Department of Labor of his intent to file such an original action in the district court. 49 U.S.C. Section 20109(d)(3) and 49 CFR 1982.114.

39. Pursuant to 49 U.S.C. 20109(d)(3), the plaintiff now is bringing this original action at law and equity for de novo review by the United States District Court for the Southern District of New York, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE**, in order to encourage employees to freely report all hazardous safety conditions and to refuse to violate FRA safety regulations without fear of any adverse actions being taken against them, thereby fulfilling the purpose of the FRSA to promote safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including:

--expungement of any and all references to the adverse actions related to the plaintiff's protected activities described above;

--compensatory damages for any medical expenses incurred due to defendant's conduct;

--compensatory damages for any economic losses due to defendant's conduct, including lost wages incurred as a result of prosecuting this matter;

--compensatory damages for emotional distress due to defendant's conduct;

--the statutory maximum of punitive damages;

--special damages for all litigation costs including expert witness fees and attorney fees;

and any further relief the Court deems just and equitable.

Dated at New Haven, Connecticut
this 10th day of February, 2016

## PLAINTIFF DEMANDS TRIAL BY JURY

By his attorney,

*/s/ Charles C. Goetsch*
_____
Charles C. Goetsch [CG0982]
Charles Goetsch Law Offices LLC
405 Orange Street
New Haven, CT 06511
Tel:  (203) 672-1370
Fax:  (203) 776-3965
charlie@whistleblower.com