USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/2/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
HENRY LOCKHART, :
:
                              Plaintiff, :          16-CV-1035 (JMF)
:
            -v-                   :     MEMORANDUM OPINION
:           AND ORDER
LONG ISLAND RAILROAD COMPANY, :
:
                             Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Henry Lockhart, a locomotive engineer, sues his employer, the Long Island Railroad Company ("LIRR"), alleging a violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109 *et seq.* Specifically, Lockhart alleges that the LIRR violated the FRSA's anti-retaliation provisions by disciplining him for (1) refusing to violate a Federal Railroad Administration ("FRA") safety regulation; (2) reporting a hazardous safety condition; and (3) following the treatment instructions of his treating physicians. The LIRR now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. (Docket No. 16). For the reasons that follow, the motion for summary judgment is granted.

## BACKGROUND

      The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motions, are largely, if not entirely, undisputed. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

      Lockhart began working for the LIRR on May 23, 2001, and has been a locomotive engineer at the railroad for more than twelve years. (Docket No. 17 ("Def.'s SOF") ¶ 1). On

September 7, 2013, Lockhart visited his dentist for a toothache and was prescribed Vicodin. (*Id.* ¶¶ 2, 4). He called the LIRR Medical Department to report that he had been prescribed the medication and missed work that day. (Docket No. 25-1 ("Pl.'s SOF") ¶ 3). Thereafter, on September 13, 2013, Lockhart underwent oral surgery. (Def.'s SOF ¶ 5). Once again, Lockhart called the LIRR Medical Department, which instructed him not to work for twenty four to forty eight hours after taking the Vicodin. (Pl.'s SOF ¶ 6). Lockhart missed work that day and the next. (Def.'s SOF ¶ 6). On September 20, 2013, LIRR manager Eric Lomot sent Lockhart a "Letter of Caution," noting his absences on September 7th and 14th (as well as three other days). (*Id.* ¶ 7). The letter stated that it did not "constitute formal discipline," but it is undisputed that such a "Letter of Caution" is the first step in a five-step disciplinary process ending in termination of employment. (Pl.'s SOF ¶ 7). Lockhart eventually submitted documentation from his physicians regarding his absences on September 7th and 14th and, on July 7, 2014, the LIRR withdrew the September 20, 2013 Letter of Caution. (Def.'s SOF ¶¶ 11-18).

On October 11, 2013 (before the LIRR had withdrawn the Letter of Caution), Lockhart submitted a complaint to the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") claiming that he had been disciplined as a result of the absences relating to his toothache in violation of the FRSA. (Def.'s SOF ¶ 33). Thereafter, on October 24, 2013, the LIRR issued a policy directive, advising Lockhart's union that, if an employee missed work for medical reasons, he or she would not be assigned absences or subject to discipline if he or she submitted a medical certification form within three days of returning to work and had been following the orders or treatment plan of a treating physician. (Def.'s SOF ¶ 29). The relevant form, the SLA-28, was never submitted by Lockhart; Lockhart claims that he was unaware of the requirement. (Pl.'s SOF ¶ 31).

On July 7, 2014, Lockhart received another Letter of Caution with respect to six absences post-dating the September 20, 2013 Letter of Caution. (Def.'s SOF ¶ 21). Lockhart claims that some of those absences were due to a work-related shoulder injury that he sustained in August 2011. (Pl.'s SOF ¶ 23). In particular, Lockhart claims that he took Oxycodone for the injury on November 13, 2013, December 18, 2013, June 19, 2014, and August 22, 2014, and that he was instructed by the LIRR Medical Department not to work for twenty four to forty eight hours after taking the medication. (*Id.*). On July 14, 2014, Lockhart submitted a letter from his physician noting that he had a prescription for Oxycodone and that he occasionally took the drug on a per needed basis. (*Id.* ¶ 25). On October 6, 2014, however, the LIRR issued Lockhart a Notice of Investigation — the second step in the Railroad's five-step disciplinary process — in connection with his absence on four dates, including August 24, 2014, one of the dates on which Lockhart claims that he missed work due to his taking Oxycodone and being instructed by the LIRR Medical Department to stay home. (*Id.* ¶¶ 26-28).

On June 11, 2015, OSHA dismissed Lockhart's complaint (which had been amended to include allegations relating to his shoulder injury and treatment). (*See id.* ¶¶ 33-36). OSHA did so on the ground that "the evidence gathered in the investigation" had shown that Lockhart "was absent in accordance with his physician's orders related to a treatment plan for a non-work-related illness" and that the "FRSA does not protect employees who are absent pursuant to a physician's order for a non-work-related illness or injury from discipline under a railroad's attendance policy." (*Id.* ¶ 36). On July 8, 2015, Lockhart requested a hearing before a Department of Labor Administrative Law Judge but thereafter withdrew his request for a hearing based on his decision to file this action. (*Id.* ¶¶ 38-39).

## APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### B. The FRSA

The purpose of the FRSA is "to promote safety in every area of railroad operations." 49 U.S.C. § 20101. To that end, the FRSA prohibits railroad carriers from retaliating against

employees who engage in various safety-related protected activities. *See id.* § 20109. Three specific statutory prohibitions are at issue here. First, Section 20109(a)(2) provides, in relevant part, that a railroad carrier

> may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done . . . to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security.

Second, Section 20109(b)(1)(A) provides, in relevant part, that a railroad carrier "shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for . . . reporting, in good faith, a hazardous safety or security condition." And third, Section 20109(c)(2) provides, in relevant part, that a railroad carrier "may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician."

To establish a *prima facie* claim of retaliation under the FRSA, an employee must show by a preponderance of the evidence that he (1) engaged in protected activity as defined in the statute; (2) his employer knew that he had engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *See, e.g.*, *Bechtel v. Admin. Review Bd.,* 710 F.3d 443, 447 (2d Cir. 2013); *Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 107 (4th Cir. 2016); *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). If the plaintiff satisfies all of the requirements, "then the burden shifts to the employer to demonstrate by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." *Conrad*, 824 F.3d at 107 (internal quotation marks omitted). Failure to satisfy any one of the *prima facie* requirements is fatal to a claim. *See id.* Notably, under the statute's "contributing factor" causation standard, a *prima facie* case does not generally require

5

proof of the employer's retaliatory motive. *See, e.g.*, *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014); *Coppinger-Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010). "But the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." *Kuduk*, 768 F.3d at 791. At bottom, the essence of a retaliation claim under the FRSA is "discriminatory animus." *Id.*; *see also Consol. Rail Corp. v. U.S. Dep't of Labor*, 567 F. App'x 334, 338 (6th Cir. 2014) (finding sufficient evidence "that animus was a contributing factor in [an employee's] termination").

## DISCUSSION

Applying the foregoing standards here, Lockhart's claims fail as a matter of law. As an initial matter, to the extent that he brings claims related to his toothache-related absences in 2013, those claims are easily rejected for at least two reasons. First, and most straightforwardly, Lockhart cannot show that he suffered an unfavorable personnel action. After all, the LIRR withdrew the September 20, 2013 Letter of Caution that it had sent in connection with Lockhart's absences (*see* Def.'s SOF ¶ 18), and there is no suggestion, let alone proof, that he suffered any sort of negative consequence as a result of those absences. Second, and in any event, to the extent that Lockhart's toothache and toothache-related treatment were not work-related, he cannot show that he engaged in protected activity as defined in the FRSA. Indeed, courts have uniformly held that subsections (b)(1)(A) and (c)(2) of the statute are limited to "work-related" conditions and injuries. *See Stokes v. Se. Pa. Transp. Auth.*, 657 F. App'x 79, 82 (3d Cir. 2016) (subsection (b)(1)(A)); *Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor*, 776 F.3d 157, 163-68 (3d Cir. 2015) ("*PATH*") (both); *Murdock v. CSX Transp., Inc.*, No. 3:15-CV-1242 (JJH), 2017 WL 1165995, at *4 (N.D. Ohio Mar. 29, 2017) (both); *Miller v. BNSF Ry. Co.*, No. 14-CV-2596 (JAR) (TJJ), 2016 WL 2866152, at *14-15 (D. Kan. May, 17,

2016) (subsection (c)(2)); *Goad v. BNSF Ry. Co.*, No. 15-CV-0650 (HFS), 2016 WL 7131597, at *2-4 (W.D. Mo. March 2, 2016) (both).

Although no court appears to have addressed whether subsection (a)(2) is also limited to work-related conditions, the logic of the foregoing decisions — particularly the Third Circuit's leading decision in *PATH* — suggests that it is. *See* 776 F.3d at 166 (citing "[t]he purpose of the entirety of the FRSA" as a reason that "subsection (b)(1)(A) must be read as having at least some work-related limitation, even though no such limitation appears on the face of the statute"). At a minimum, there is no authority, or basis, to conclude that the statute extends to the situation presented here: an employee's inability to report to work due to his self-reported use of narcotics for non-work-related reasons. For one thing, every case analyzing subsection (a)(2) has concerned an employee's refusal to violate laws related to the condition of the railroad or its equipment, not to the personal health of the employee. *See Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 628 (4th Cir. 2015) (identification cap for defective rail cars); *Rookaird v. BNSF Ry. Co.*, No. 14-CV-176 (RSL), 2015 WL 6626069, at *3 (W.D. Wash. Oct. 29, 2015) (rule or regulation related to air testing cars); *Morgan v. Norfolk S. Ry. Co.*, No. 13-CV-0257 (WMA), 2014 WL 3891984, at *1 (N.D. Ala. Aug. 8, 2014) (fabrication of safety violations); *Worcester v. Springfield Terminal Ry. Co.*, No. 12-CV-00328 (NT), 2014 WL 1321114, at *1 (D. Me. Mar. 31, 2014) (leaked hydraulic oil on a railroad bed). For another, if the Court were to conclude that the statute applies in such situations, it would prevent a railroad carrier from disciplining an employee who declined to report to work because he or she was drunk or high on drugs (insofar as doing so would violate a railroad safety regulation). The statute must be "interpreted in a way that avoids" such "absurd results." *S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (internal quotation marks omitted).

7

To the extent that Lockhart brings claims relating to his shoulder injury, they fall short as well. First, assuming *arguendo* that the Letter of Investigation (which has apparently not been withdrawn) qualifies as an unfavorable personnel action, he cannot show that he engaged in protected activity within the meaning of either subsection (a)(2) or (b)(1)(A). As discussed above, the FRSA is a whistleblowing statute concerned with railway safety, and Lockhart cites no authority for the proposition that subsection (a)(2) covers non-railroad equipment-related conditions such as an employee's inability to report to work due to his use of prescribed narcotics. Similarly, nothing in subsection (b)(1)(A) "indicates that the 'hazardous condition' extends beyond work-related safety conditions under the rail carrier's control and covers personal, non-work illnesses." *Stokes*, 657 F. App'x at 82 (internal quotation marks omitted). Lockhart's alleged need for Oxycodone to alleviate shoulder pain arising from an injury three years earlier was certainly not a condition under the LIRR's control, and thus subsection (b)(1)(A) is inapplicable here.

Lockhart's shoulder-related claim under subsection (c)(2) is arguably stronger, if only because the injury that allegedly triggered his need for Oxycodone was work-related. But Lockhart's claim under that provision — indeed, all of his claims — fail for a different reason: He presents no evidence of intentional retaliatory animus on the part of the LIRR and, thus, cannot satisfy the "contributing factor" prong of the *prima facie* test. In fact, the undisputed evidence makes clear that the reason for Lockhart's absence from work had nothing to do with the Letter of Caution or the Letter of Investigation; instead, Lockhart received the Letters because he failed to comply with the LIRR's SLA-28 policy, which required him to submit certain documentation to verify that his absences were due to the orders or treatment of his a treating physician. Indeed, Lockhart himself conceded that he did not submit the required forms

and that, had he done so, he would not have received the Letters. (Docket No. 18-2, at 38). To the extent that Lockhart was disciplined, therefore, it was not for a reason prohibited by the FRSA; it was because of his failure to adhere to the LIRR's policies and his unauthorized absenteeism. *Cf. Heim v. BNSF Ry. Co.*, No. 13-CV-0369, 2015 WL 5775599 (JMG), at *4 (D. Neb. Sept. 30, 2015) (holding that an employee cannot use the FRSA to avoid punishment for refusing to follow railroad procedures by "completing an injury report confessing his behavior").

Lockhart's sole argument to the contrary is that the LIRR's SLA-28 policy violates Section 20109(h), which provides that "[t]he rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment." 49 U.S.C. § 20109(h). (Pl.'s SOF ¶ 30). But Lockhart cites no authority in support of that argument — a vacuum that is particularly noteworthy because requiring documentation to verify medical absences seems to be a common practice among railroad carriers. *See, e.g.*, *Stokes*, 657 F. App'x at 80; *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 190 (5th Cir. 2014); *Kulavic v. Chi. & Ill. Midland Ry. Co.*, 1 F.3d 507, 509-11 (7th Cir. 1993); *Green v. Grand Trunk W., R.R., Inc.*, No. 16-CV-11587, 2016 WL 7634484 (GER) (MKM), at *1 (E.D. Mich. Nov. 22, 2016), *report and recommendation adopted* 2017 WL 24864, at *1 (E.D. Mich. Jan. 3, 2017); *Loos v. BNSF Ry. Co.*, No. 13-CV-3373 (PAM) (FLN), 2015 WL 3970169, at *1 (D. Minn. June 30, 2015). More significantly, nothing in the text, structure, or purpose of the FRSA suggests that Congress intended Section 20109(h) to preempt the ability of railroad carriers to take reasonable steps to verify that employees taking sick leave are actually sick. In fact, far from undermining Congress's intent, policies like the LIRR's *advance* the purposes of the FRSA by helping to ensure that railroad carriers do not take unfavorable personnel actions against employees who are absent because of the orders or treatment plans of physicians. (*See* Docket No. 18-10 (explaining the policy)). Such policies

9

also serve to limit unauthorized absenteeism, which can *itself* be the cause of potential safety issues. *See PATH*, 776 F.3d at 169 (dismissing the Department of Labor's assumption that Congress would have wanted Section 20109(c)(2) to apply beyond work-related injuries by noting that Congress may well "have been more concerned about potential safety issues *caused* by absenteeism"). In short, in the absence of a clear statement to the contrary, the Court will not presume that Congress intended Section 20109(h) to be construed to prohibit railroad carriers from enforcing reasonable policies like the LIRR's SLA-28 policy. *Cf. FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 160 (2000) (observing that Congress is "highly unlikely" to make decisions of "economic and political significance" through "subtle device[s]" or in a "cryptic . . . fashion") (internal quotation marks omitted)); *PATH*, 776 F.3d at 168 ("We are not prepared to assume that Congress decided to enact such a significant change by inserting an eleven-word sentence fragment between much more limited protections, from which such a change could be *deduced*.").

## CONCLUSION

For the foregoing reasons, the LIRR's motion for summary judgment is GRANTED, and Lockhart's claims are dismissed in their entirety. The Court need not, and does not, reach either the LIRR's other grounds for dismissal or its motion to preclude Lockhart's proposed expert witness, George A. Gavalla. (Docket No. 21). The Clerk of Court is directed to terminate Docket Nos. 16 and 21 and to close this case.

SO ORDERED.

Date: August 2, 2017
New York, New York

JESSE M. FURMAN
United States District Judge